We'll hear argument next in Case 18-5924, Ramos v. Louisiana. Mr. Fischer. Mr. Chief Justice, and may it please the Court, last term in Timms v. Indiana, this Court reaffirmed the well-settled rule that incorporated provisions of the Bill of Rights apply the same way to the states as they apply to the federal government. Taking that rule as the case, and indeed that reasoning flouted precedent at the time, and has since been relegated to nothing more than an isolated relic of an abandoned doctrine. The state's only defense in support of the judgment below is that the Sixth Amendment does not require unanimity at all. That is, not in state courts or in federal courts. This Court should reject that argument. As the Court has said many times over many decades, the Sixth Amendment requires a unanimous verdict to convict. In particular, what the Court has said is that the Sixth Amendment right to trial by jury carries with it the essentials of the common law. And the common law authorities are uniform, explicit, and absolute. Unanimity is an absolute requirement to trial by jury. And the reasons that the common law commentators gave for that rule resonate just as powerfully now as they did then. In a nutshell, we are not prepared to take away somebody's liberty unless a cross-section of the community uniformly agrees that criminal punishment is appropriate. Now, I don't think the state disputes that historical account that I just gave you, or even that unanimity is central to the proper functioning of the jury trial right. Instead, what the state says are two primary things. First, that the drafting history of the Sixth Amendment suggests that the framers meant to dispense with that historical rule. And second, that that historical requirement of unanimity is no more important than the 12-person rule, which this Court said is not part of the Sixth Amendment in Williams. So let me turn to those two arguments. Let me start with the drafting history. And we think for three reasons the state has overread the drafting history. First, as the Court itself has said in cases dealing with provisions like the Second Amendment and the Double Jeopardy Clause, we do not read into a deletion of language any meaning when there's no contemporary evidence that it was designed to change the meaning of the provision. And that's all the more true here because of the contextual backdrop. The state talks about the fact that many states at the time had trial-by-jury provisions in their own constitutions and correctly notes that some of those provisions explicitly required unanimity, but some of them didn't. And the rule was the same across all of those states. So the thing that the framers would have taken from the context at the time would have been that it doesn't matter whether you have unanimity in the provision. It requires it either way. Well, but still, I mean, to give them, to be fair, even if you see some have unanimity, some don't, and you've got a draft that says unanimity, I don't understand why you would take it out and just then be able to argue later, well, it doesn't matter whether it was in or not. It's in there in the draft. Why would they take it out? Well, the best historical evidence, Mr. Chief Justice, is that it was — it got latched on to a debate about the dissonance requirement. And so what James Madison did is take away all of the elaboration of the right to trial by jury. And so I think actually the best example also to respond is the Pennsylvania Constitution, which at the time of the founding required unanimity explicitly. And then Justice Wilson actually amended the — rewrote the Constitution in Pennsylvania to take it out. And remember, Justice Wilson, as we note at length in our brief, was one of the leading expositors of the common law notion of trial by jury and the Sixth Amendment requiring unanimity. And I think that was the last thing I wanted to say about the drafting history, is that one would think that if the framers had dispensed with 400 years of uniform practice, that somebody would have said something about it. But what you have is the reverse. You have Justice Wilson right after the Constitution is founding talking at great length about how unanimity is, quote, indispensable. You have Justice Story in his commentaries using exactly the same word, indispensable. And you have any number of other criminal law treatises at the time, all of which are gathered in our brief and at greater length in the ACLU brief that canvasses the history, all reinforcing this notion. You are asking us to overrule Appadakus. So we do have to think about stare decisis. And last term, the majority was lectured pretty sternly in a couple of dissents about the importance of stare decisis and about the impropriety of overruling established rules. I'm thinking about the dissent in the Franchise Tax Board and the dissent in Nick v. Township v. Scott. And a very important consideration in considering stare decisis is reliance. So it would be helpful to me if you could compare the reliance that's at issue here. Louisiana and Oregon have tried thousands of cases in reliance on Appadakus. The court said this was okay. We've never suggested that it wasn't. We've denied cert in lots of cases. So can you compare the reliance here with the reliance in Franchise Tax Board and in Nick? Well, I think, Justice Alito, I'd like to make both a legal comparison and a factual comparison. So starting with the law, I think it's important to note that the State here is claiming to rely on Appadakus. But they are not defending the rule of Appadakus, which is that the Fourteenth Amendment doesn't require States to have unanimous verdicts. Instead, they're asking the Court to adopt a new rule of Sixth Amendment law that the Court has never adopted. And I know the Court last term, as you note, in part of those disagreements, some justices were saying, well, it's okay to come up and rehabilitate an old rule. That shouldn't forego stare decisis value. But here the State's asking for a brand new rule. I don't want to interrupt. That's a fair point. But we're not tied in deciding this case to the position that's taken by the State. We have a decision of this Court, Appadakus, and we could affirm it on a different ground from the one that the exact one the State has advanced. But I want you to complete what you were saying. So let me give you three reasons why, even if you take that as a given, stare decisis shouldn't carry the day. And then I'll turn to the facts. But still sticking with the law, three things. One is, remember, Justice Powell's vote was an isolated vote where there was no majority for the Court. And it was, indeed, his vote was rejected by the other eight justices on the Court. So could I ask you, this is so unfair, Mr. Fisher, but could I ask you to take that out of your analysis and just pretend for the remainder of your analysis, I think that that's an important consideration, which I'm not quite sure how to think about. But if you assume that this was, you know, just any old 5-4 decision. So I would then move to my second point, which would be that that 14th Amendment rule, even if had been adopted by a majority, is a derelict in the law. It is isolated. It is really an abandoned relic of past jurisprudence. And you don't have to look further than the last term in Timms. You can look at the McDonald opinion. And you can look at any number of other opinions from this Court that say the same standards have to apply to the states as the federal government. I mean, it would be an outlier. It would be something that says, look, we just, we have an exception here. We are going to treat this amendment differently. But, you know, we tolerate a pretty significant degree of diversity in state criminal procedure. And this could just be one of those sorts of rules where we say, you know, there are occasional times where we think that the state gets to decide something on its own. And so, yeah, it's an anomaly. Usually we do look in stare decisis reasoning for anomalies. But this is not the kind of anomaly that should concern us over much. Because, in general, criminal procedure law is loaded with anomalies. Well, Justice Kagan, I think, let me respond to one thing that I hope isn't fighting the premise. But what I would say is, if you look at the Court's incorporation jurisprudence, that is the one place the Court has not accepted anomalies. And where the Court has said that stare decisis is a very low ebb when it comes to states following the fundamental rules of the road of the Bill of Rights. So I think that, on that level, it is a different kind of a situation than the ordinary stare decisis case. Recognize that exception. Pardon me? Tibbs, in saying the excessive fines clause applies to the states, recognize Apodaca as an exception. Recognize the Sixth Amendment was the one exception to complete incorporation. That's right, Justice Ginsburg. And I think my argument today is that, even though that's been an exception for several years, it shouldn't go forward. It doesn't have any footing in the law. There's no Fourteenth Amendment footing. So let me turn to the, I think, back to Justice Alito's question, because I think you were asking me about convictions. And I think this is another area where stare decisis actually has less to say than normal. And that's because the Court already has a developed set of doctrines, like the Teague jurisprudence and the Griffith jurisprudence, that are themselves designed to give states reliance interest in their past and past precedent from this Court. So unlike the ordinary case, franchise, tax board, and any number of other doctrines, you have a whole separate set of doctrines that the state can invoke to support its reliance interest in those past convictions. Well, we don't know how a decision in your favor in this case would play out in collateral review, either in Federal court or in State court. But do you think, I mean, I can well envision seeing you up here in a term or two arguing that this is a water, the rule that you're trying to persuade us to accept today is a watershed rule of criminal procedure. You think that's a frivolous argument? I don't think it's frivolous, Justice Alito. I think the best thing the state will have to say for itself in that respect is that Duncan itself, when the Court incorporated the right to jury trial, Duncan itself was not held to be retroactive in the DeFestano opinion. And in Schiro v. Summerlin, the Court reaffirmed that precedent. But Justice Alito, the core point that I'm making to you today is in deciding whether to overrule a past case, absolutely reliance interests are at stake. But there are separate doctrines to protect those reliance interests so that I don't think you should give them undue weight in this situation. And I don't think the Court has given those kinds of things undue weight in the past. And I would direct the Court back to its McDonald decision where it cataloged all the times over the years in the Court's incorporation jurisprudence that it has overruled past cases. And I don't think there's any other area of law in the Court's jurisprudence where stare decisis over the years has held less value than incorporation. What about the size of a jury? If we were to accept your argument here, how or could we draw a distinction between this case and the precedence on size of a jury? Well, Justice Kavanaugh, I think Williams itself tells you how you would do that. It says that the question under the Sixth Amendment is whether the feature at issue is an indispensable feature or, as the Court also put it, an essential feature of the right to jury trial as we practice it in this country. And what the Court concluded in Williams after looking at the historical sources was they were mixed. And probably the better reading of those sources were the 12-person rule was just a historical accident. And so that is a holding of this Court that puts it on the other side of the ledger from the uniform common law authorities when it comes to unanimity. And that holding, moreover, Justice Kavanaugh, would be entitled just to a stare decisis effect. Do you think we would have to— Mr. Fisher, Williams, I think, is a problem for you. If only six minds need to agree to convict of a criminal offense, why shouldn't 10 be enough? Justice Ginsburg, the key principle is not how many. It's the degree of agreement. And so my core proposition to you today is that a 10-2 verdict is less guaranteed to be accurate and less guaranteed to be consonant with the purposes of jury trial than a 6-0 verdict. And I think maybe it would help— You preface that by saying that's a key part of the distinction you're trying to draw? Well, maybe it is the very distinction. Well, I know, but I mean, I guess I'm not sure that's self-apparent. I mean, I don't know whether you play it out in game theory or something, but if you ask the defendant, what do you want? Do you want six and they have to agree across the board, or do you want 12 and you've got to convince—that's not immediately apparent to me, which I would take. Well, Mr. Chief Justice, can I give you a legal answer and a practical answer? So as a legal answer, the unanimity required even of a six-person verdict is more consistent with, and in fact is the only consistent outcome, with the purposes of the jury trial clause. Because the core purposes are effective deliberation towards an accurate decision and a cross-section of the community. Now remember, what happens in Louisiana and in Oregon is that a cross-section of the community, somewhat by design, can be left out of and canceled out of those deliberations. And that's very different than a 6-0 verdict when it comes to the way things happen in the jury room and the public confidence in that verdict. And I'll also give you a practical answer to your question. When Louisiana was considering changing its law, and it indeed did change its law, which I would say parenthetically is also something that I think should be taken into account when it comes to stare decisis that Louisiana has even changed its law. But during those deliberations, there was a prosecutor who testified before the legislature and said that he used to sometimes charge felonies instead of misdemeanors because it was easier to get a 10-2 verdict than it was to get a 6-0. Mr. Fisher, let's say I'm not entirely persuaded by your functionalist arguments about the distinction between unanimity and numbers, between this case and Williams. Have you got anything else besides these functionalist arguments about the real great importance about unanimity and the relative lack of importance about numbers? I think what I would say to you, Justice Gorsuch, is the text of the Sixth Amendment, understood through its purpose, distinguishes this case from Williams. And so let me explain what I mean by that. The text of the Sixth Amendment says the defendant has a right to trial by jury. And from history, we know that that phrase meant that not just that the defendant got a jury, but that the trial by jury included the way the jury reached its decision. In fact, if we have a jury who hangs or can't reach a verdict, there's a mistrial. So we don't even have trial by jury. So that's inherent in the term. I think what the Court said in Williams is that, of course, there are going to be some features of the common law. Imagine, for example, that the jurors all had to wear a particular color jacket to courtroom. There's going to be certain incidental features of the right to jury trial that don't necessarily have to be read along with the Sixth Amendment. There would be certain things that happened to occur at common law that wouldn't necessarily be brought forward today. Now, I think maybe what you're driving at, to some degree, is I think there is an argument, and there was a powerful argument made in Williams, that the 12-person requirement shouldn't be thought of that way. There were some people who thought the 12-person requirement was also a very important feature. But, of course, there were others who didn't. Lord Coke, which the Court quoted, and many other commentators thought, well, no, 12 people is just a fanciful number. It's inherently arbitrary. It doesn't really mean anything. And so all we're getting at in this case, I think, are what's the core meaning of the phrase trial by jury. If it is. Do you think, Mr. Fisher, that we would also have to overrule Ludwig v. Massachusetts if we overruled Apodaca? If I understand it right, that was another case in which Justice Powell's unusual approach to incorporation ended up being the deciding vote in the case. It's about a two-tier jury system. That's right, Justice Kagan. I think that all my position here today would tell you, if you were to revisit that, is that Justice Powell's vote in that case, just like in this case, doesn't set up a rule of law the Court should adhere to. But you would still have a separate Sixth Amendment question in Ludwig, which the Court divided on. And you'd consider that case on its own terms. And to be perfectly candid with you, I don't even know what the common law would say about the two-tier jury system. That was not something the Court considered in that case, and it would be a whole different set of arguments. You started off, and then I told you to stop. But I thought I'd give you an opportunity to do it again. I mean, what are we to make of this 414 reasoning of Apodaca? And what do you think the rule should be about stare decisis going forward? Do you need a majority? Do you just need a controlling rule? What's the right way to think about that? Well, I can tell you what I think, and I can tell you what the Court has done. I think that there are times where a single vote could be accorded stare decisis effect, particularly if it's comfortably a narrower ground within the Marx rule. But then you have other cases more like this, where Marx doesn't so easily fit onto that system. And I think that the most recent time the Court dealt with a situation like that was the Hughes case a couple terms ago, where you had a 414 vote in the prior case. And what the Court said is, we're going to consider this issue fresh. The Court did the same thing in Seminole Tribe. And Seminole Tribe's a good example of a case that drew deep divisions within the Court as to what the substantive meaning of the Eleventh Amendment was. But Justice Souter, in his dissent, said, I do not begrudge the majority for considering this issue fresh, because there was no majority of the Court  What about a party that has to make decisions about how it's going to order its affairs in the wake of a decision that it wins, but does it in a 414 decision? What is that party supposed to do? Say, well, all right, we won this case, but we really can't rely on it because we don't know what, because it has no stare decisis effect. And then what happens as the years go by and nothing happens? The Court doesn't come back to that question. Well, Justice Alito, I think that at least in the ordinary case, the party would have every right to rely on this Court's decision, subject to the ordinary principles of stare decisis that we're deciding. I think the one thing that makes this case unusual is you would think that if the party did rely on that prior case, they'd at least come up and defend it instead of ask the Court for a different rule. And I think that just tells you something about how discredited the fifth vote in this case is, which I think makes it almost a universe of one. I can't think of, I've looked and I haven't found any other case where somebody has come up to this Court and said, I'm not even going to make an argument based on the provision of the Constitution on which the previous decision rests. Can I come back to the math question that was alluded to earlier? I am not myself, I must confess, capable of doing this math, but somebody could. So if you hypothesize a jury pool with a certain percentage of jurors who are inclined to acquit, and you ask is there a greater likelihood of acquittal with a 6-0 verdict than a 10-2 verdict or an 11-1 verdict, or if the state decides to have a jury that's bigger than 12, a 15-1, a 15-person jury, to the point where the chance of acquittal is in favor of the non-unanimous rule, would that be unconstitutional? My rule is that any time the state deviates from unanimity, it is unconstitutional. So even if a state were to go beyond the number of 12, and I think the reason why is because it's a different phenomenon when somebody disagrees in the jury room. And I don't mean to be presumptuous, but I've heard some justices of this Court remark there's a difference between a 9-0 opinion and an 8-1 opinion. When somebody puts reasonable, good-faith views on the table and requires an answer from the others, it sharpens one's thinking and leads to better results sometimes. And I think at least in a jury room, that would be the case. You really want to argue that? So if the pedigree had to be as big as a grand jury and you were representing a criminal defendant, you would rather, you would say we want, 6-0 is better for us than 21-1. Justice Alito, perhaps there would be a number where that argument would start to be difficult, and I think that what I would tell you is the history and tradition of this country makes it highly unlikely that we're ever going to see a system like that. What we have uniformly almost throughout the states is a ceiling of 12, and I think you talked about a math problem, and I think maybe it's also helpful to remind the Court of the Court's decision last term in Flowers, where the Court talked about the math of peremptory challenges. And I think you have a similar math problem here, which is if you have one or two members of a minority on a jury, it could be a racial minority, it could be a political minority, it could be a religious minority, are we really prepared to say that those one or two votes can be utterly canceled out? Do the racial origins of this rule have an impact on how we think about stare decisis in this case? I think they do, Justice Kavanaugh. How? How should we factor those in? I think in a couple ways. I think when you talk about how reasonable the reliance is from the state, I think it's perhaps justifiable to look at the origins of the law that it's defending. But I also think more directly, if you're asking whether Justice Powell's 14th Amendment reasoning should stand, he didn't even consider this history. I'm not sure it was put in front of the Court. And as the Court has said many other times, like in McDonald, like in Peña-Rodriguez, when we're reading provisions of the Bill of Rights against the states through the 14th Amendment, the history and purpose of the 14th Amendment is a salient way to think about it. You really want to make that argument. You made a big deal of it in your brief. I thought you would abandon it here today. But if another state were to enact the same statute that Louisiana has tomorrow and did it for all of the legitimate policy reasons that have led such entities as the American Bar Association and the American Law Institute and lots of reputable scholars and the framers of the Constitution of Puerto Rico and the people who made the rule in the United Kingdom, all of which allow non-unanimous juries, if that was enacted for that reason, that might be constitutional, but this statute is not constitutional and the Oregon statute is not constitutional because of the origin that you attribute to them? No, Justice Alito. Let me make sure that I am clear with the Court. We think that purpose perhaps could inform the Court's decision making, and particularly if you're looking at stare decisis, it could inform whether to stick with an old 14th Amendment rule. But we don't think it's essential to our Sixth Amendment argument, and we think if a state had followed the old ALI recommendation before the Sixth Amendment was incorporated in the states that I'd be making all the other same arguments I'm making here today. But I think the thing I would leave you with before I sit down for rebuttal is that it is telling, Justice Alito, I think, that no state has ever done that. The only two states that have ever deviated did so under circumstances where the cross-section of the community that the And part of the design was to leave a part of that cross-section perhaps out of deliberation. You mentioned a couple of times earlier in your argument where the Court has said that a decision is entitled to less stare decisis effect because the parties have come into court and tried to kind of improve the reasoning, so the Court has said, of the earlier decision. And as I understood what you were saying, you were saying that this even goes beyond that. Could you explain why or is it the same as that? Because I've never liked that argument. So is this just, is your argument just the same thing? No, I think it's a step further, Justice Kagan. I think even if you believe that parties ought to be entitled, especially when there's many years between an old decision and a new one, to make, defend the old decision with the rhythms and the precedents and the ideas that have intervened. So, for example, to take a case like Citizens United, perhaps the government could have come in on that case and made other First Amendment arguments in support of that statute in that case. I think we have here something entirely different, though. The State is not even making a Fourteenth Amendment argument. They're asking the Court to adopt a rule, and let me just be clear, the rule that they're asking the Court to adopt is the Sixth Amendment does not require a unanimous verdict. Five justices in Appadacka squarely rejected that argument, and the Court itself and 14 other opinions have rejected that argument. So, Justice Kagan, I think this is different in kind. It was unsettled until Appadacka. The unanimity question was not settled until Appadacka, right? Well, because four of the justices there thought unanimity was not required. Four thought it was. So, it was Appadacka, the fifth vote being Powell's vote, that set the precedent for requiring unanimity in federal trials. Let me say something about before Appadacka and then after Justice Ginsburg. Before Appadacka, the Court had squarely held in Andres in the 1940s that the Sixth Amendment requires a unanimous verdict. It had said it many other times, but I think in that case it was integral to the holding. And so, what I understood the four-justice plurality to be saying in Appadacka was doing what Justice White had said in a footnote in Duncan it could do, which is reconsider the old precedents. But even if I didn't have that, I would have the five votes in Appadacka, Justice Ginsburg, and the statements in cases like Richard and Richard, where the Court has cited Justice Powell's opinion as the law and said it settles the Sixth Amendment question. Thank you, Counsel. Ms. Murrell. Mr. Chief Justice, and may it please the Court, we agree with Petitioner that this case presents two issues, whether the Sixth Amendment requires unanimity, and if so, whether that requirement applies to the states. The Court should decide this case on the first issue because nothing in the text, structure, or history of the Sixth Amendment requires unanimous jury verdicts. Nor has this Court ever held that the framers wholesale adopted the common law. In fact, the courts expressly rejected that view in Hurtado with regard to the Bill of Rights and in Williams. Those correct holdings, plus historical evidence that the framers expressly rejected unanimity in the Sixth Amendment, are fatal to Petitioner's request to add back words that the Senate rejected in 1789. The reliance interests here are overwhelming. Because the Sixth Amendment is not a code of criminal procedure, for two centuries states have adapted their criminal justice systems to their particular circumstances, and Louisiana for the last 50 years has specifically relied on this Court's express approval of the system that's challenged here today again. We have 32,000 people that are currently serving time for serious crimes, and each of these convictions would be subject to challenge if Apodaca is reversed. Overruling Apodaca would strike at the foundation of widespread state practices that include indictment by information and juries of fewer than 12. The beauty of our system is that people can change the rules. So if they now want to require unanimity, they can do so. They can amend their state laws, as Louisiana recently did, or they can amend the federal Constitution. The judgment in Apodaca should be affirmed. And I'm happy to take questions. But you're asking the Court to take up a question that five justices answered in Apodaca, that is, that the Sixth — Apodaca, five — there were five votes to say that the Sixth Amendment requires jury unanimity in federal trials. You are asking to — us to reject a rule that five justices adhered to. Justice Ginsburg, we don't think that Justice Powell's decision was entirely clear with regard to the rule as it would apply historically. We think the text is very, very clear that unanimity was — is not there and that it was rejected. So we're happy — There were four justices who said unanimity was required. And then there was Justice Powell who said unanimity is required in federal trials. You are asking us to overturn that position that unanimity is required in federal trials. Justice Ginsburg, we don't believe that that was central to his holding or to his position and his plurality opinion. And our position would be that one justice's opinion that is not central to his — his plurality opinion plus four dissenters does not — is not equal to a holding. Well, then, aren't we — aren't we having to address this fresh, just as you really seem to want us to do? I mean, that — that seems to me the mission that we are in a proper place to take this up afresh. If precedent waits for anything, what do we do with Andres? What do we do with those 14 cases throughout Supreme Court history that seem to treat unanimity as part of the Sixth Amendment? And what do we do as well with Hughes and with Seminole Tribe and a lot of other cases where we've been facing similarly splintered decisions and the court has come back and addressed the question fresh without considering stare decisis in those cases? Sometimes the court can't reach majority opinion. Sometimes it's just unable to. And why doesn't a state take that risk when it relies on a decision that is so splintered? Justice Gorsuch, I think that Louisiana reasonably relied on a decision of this court that non-unanimous juries were constitutional. They also did that on the tail end of a decision by this court that was also constitutional. We're dealing with a six-person jury, so we can put that aside. We're dealing with unanimity. And I don't think you're arguing that the court did anything improper in Hughes or did anything improper in Seminole Tribe by taking up the question fresh. And I'm just curious why it would be different here and why the state shouldn't be assigned some degree of risk, assuming risk, by proceeding in this area on the reliance of one member of the court's opinion that is rather, I think, fair to say idiosyncratic. Well, for one thing, I think that incorporation doctrine evolved over time. So I'm not sure that the state was – it was reasonable to expect the state to ignore an actual holding in the case and anticipate that that would change over time. So that's one response that I have to that question. My second response is that I think you can take it up afresh. But also, this is a non-textual rock. Appreciate that. Yeah. Well, just on that, General Merrill, so – I mean, you don't really want us to take it up afresh, do you? I mean, aren't you – I'm sort of confused, because there's this sentence in your brief. It says, neither party is asking the court to accord Justice Powell's solo opinion in Appadacka precedential force. Is that right, that you're not asking us to Because if that's right, then – I mean, are you basically just saying to me, forget Justice Powell's opinion in Appadacka, just decide what the Sixth Amendment requires? Justice Kagan, I think that given the evolution of incorporation theory, we find ourselves in a position where it is even more important to get the text right and to get the history right. So if that means taking that issue up afresh – But you see, I think – I agree with Justice Alito. You have some strong reliance interests here. But your reliance interests are only relevant in the context of an argument from stare decisis. And I guess I would like to know, then, how are your reliance interests relevant? What argument from stare decisis are you making? Well, we think that the text and the history do not include a non-unanimous jury verdict. We think that that's a constitutional – that is a choice that states can make. And so, we think that the four justices, plus Justice Powell's decision, were a ruling that said that it was not unconstitutional to have non-unanimous jury verdicts, and it was reasonable for us to rely on that. So we don't entirely disavow stare decisis. I mean, we still believe we have enormous reliance interests. You are relying on Justice Powell's opinion in Apodaca. That's the only – We're also relying – For stare decisis, that must be what you're relying on, combined with the other four that said the states don't have to provide unanimous juries. Well, I think, Justice Kavanaugh, that we're also relying on this Court's opinions in Williams and in Hurtado that said that the Court – that has never adopted the common law wholesale. I mean, that's – that is, I think, critical to the analysis. Justice Scalia, you are not urging the Apodaca. You want us to go back and say what the Sixth Amendment requires, the issue on which the Court was divided. You want us to say unanimity is not required in federal trials, and it's not required in state trials. And on that Does the Seventh Amendment require unanimity in civil trials? Justice Ginsburg, I think the Seventh Amendment is a different question. Its text is different. Its structure is different. But just the answer to my question, is unanimity required under the Seventh Amendment in civil trials in federal court? I don't believe that it would be required in the Seventh Amendment, but I don't think you need to determine that here today. That's not the issue. Well, this Court has held that it – there's a holding of the Supreme Court that's over 100 years old, so holding. And so that – no reliance interest for anybody there? Justice Gorsuch, my answer is specifically related to the text and what the text would require. I'm not disputing that there might be precedent that would apply in the Seventh Amendment. Oh, okay. All right. All right. So we don't count precedent in the Seventh Amendment, but we do in this area, in Justice Powell's opinion. Let's say the Seventh Amendment does require a jury trial. In what universe does it make sense to imagine that the framers of the Constitution would have insisted on a jury trial for civil cases where property is at stake, but not in criminal cases where liberty is at stake, and lives? I believe that the structure and the history of both ultimately on the textual answer reach the same result. I don't think that they would. Right. You disagree with the Supreme Court's analysis on the Seventh Amendment. I understand that. But spot for me a moment that the Supreme Court might have gotten the Seventh Amendment right, okay? Make it possible, all right? In what universe would the rule be different for criminal cases? I don't think necessarily the rule would be different. I think that we have to look at what the text and the history demand, and that when we are talking about a non-textual right, I think that it is very, very important that the court get the history right. And history tells us that unanimity was rejected for a reason, that there was a very specific decision that was made to reject unanimity. It was proposed. It was rejected. It was debated. It was discussed. It was a known issue because four states had actually adopted non-unanimity. How far are you willing to depart from unanimity? Would a seven to five requirement be okay under your theory? Mr. Chief Justice, I think this court has established some of the outer boundaries already in Williams and in Birch and in Appadacka. So nine under Appadacka, nine-three is okay. I would also remind the court that Louisiana, in reliance on this court's decision in Appadacka and in Johnson, went at a constitutional convention the year after that case was decided, discussed it, expressly relied on it, and increased the voting rules to ten-two. Can we go back to reliance a moment, putting aside that in Janus, a couple of decisions from the Supreme Court put the unions on notice that the constitutional theory was on shaky ground. And here you have a series of cases, much older, telling you that the incorporation theory was on shaky ground. But you're talking about a parade of horribles if we rule against you. How about the parade of horribles if we rule in your favor? How do we decide what's at the essence of the common law jury trial? Would issues like having a fair cross-section of the community in the veneer be in question? We have a case that says that's incorporated. Or what about what we said in Sullivan, that the Sixth Amendment jury right requires a None of those terms are in the Constitution. None of those terms, as far as I know, were part of the discussions at the convention. Are they going to be open to attack now, too, if we rule in your favor? There's no history. There's no anything except our sense of what the essence of the common law right was. Not our sense, but the history of what happened and why. So I think, Justice Sotomayor, that we have the text and what made the cut after the debates over what was missing. But the debates, we have a bunch of people who were in favor of the cuts telling everybody else. Everybody understands that a unanimous verdict is the standard. So we have part of the constitutional debate. Hamilton himself, who drafted it and took out the right to a unanimous jury, basically said during the discussion, it's so self-evident we don't need to include it. So you're looking at history, Justice, in terms of what was in the context of the discussion. Not exclusively, Justice Sotomayor. I think we also would agree that due process and equal protection play a role. I mean, we don't have requirements anymore that it's only 12 white male freeholders. Exactly. So, you know, I think that's an example of how we did not adopt the common law in all of its historical terms. Congress adopted some of that language over time. It was not embedded in the Constitution. So we know that there was an historical debate. We know that states had adopted a different rule and then some of them wrote this rule into their own state constitution. So known debated problem. There's a Madison proposes an amendment, thinks he's solved this problem, and then it gets rejected by the Senate. But why was it rejected? I mean, one account is it was totally unnecessary. Everybody understood a jury trial meant unanimous agreement. So we took it out because we didn't want to clutter up the Constitution with unnecessary statements. The words jury trial themselves mean unanimous verdict. Well, Justice Ginsburg, we did clutter it up with an impartial, with the word impartial, and we did clutter it up with a number of other terms. And I think that the history showing that states felt that it was important to write it into some of their constitutions indicates that there certainly was at least a view that it should be written in by some. And so I don't think it's a fair reading to assume that that was simply because we would all know that it would be there, especially because they knew that they were writing a document for the future. For the sake of argument, assume that I think the Sixth Amendment requires a unanimous jury, just for the sake of argument. What are your best arguments, then, for why the right is not incorporated? And relatedly, your best arguments for not overruling Apodaca, which is read, the opposing counsel says, to have allowed the states to do that. Justice Kavanaugh, they are concededly not very good. I mean, I think that based on Tim's, that we recognize that this Court, at least at this point in time, has taken a view of incorporation that says that there's no daylight. So if you find that unanimity is required, I find myself in a far more difficult position than you make that argument. Well, yes and no, General Merrill, because you have this stare decisis, except you're giving it away, and I don't know what to make of that. Because I would think that what you would do is to say something like, this is an outlier in our incorporation doctrine. There's no question that it is. But it's been an outlier for 50 years. It's been completely administrable. It's been completely clear. States have had every right to rely on this for 50 years. It doesn't matter whether it was wrong, because overruling something requires more than just the decision be wrong. It's been there. States have relied on it. There's no reason to change it. The end. Stare decisis. But you're telling me that Justice Powell's opinion isn't entitled to precedential force, isn't entitled to stare decisis effect. So I don't know what to do with that argument anymore. Justice Kagan, I agree with everything that you said about the reasons why this Court should affirm apodaca and that it should be given stare decisis effect. I think that we are struggling with the fact that Justice Powell's decision doesn't seem to be the view of the Court, and that the text and the history also, we strongly and firmly believe that are on our side. You're not the only state who has an interest here. And in fact, there's only one state going forward as of this moment that has an interest in this, and that's Oregon. And Oregon might change its rule or it might not change its rule. But Oregon filed a brief, and Oregon doesn't make the argument you're making. Oregon says it should be made clear what this brief does not do. It does not address the merits of whether apodaca was correctly decided. And I think that Oregon finds itself in a position where the democratic process has stalled in anticipation of this decision. So they've written a brief that expressly, I think, emphasizes all of our reliance interests. Puerto Rico has similar reliance interests. There's a long line of cases that dealt with territorials and the Constitution's application of territories. They have similar interests, too. So we do think that reliance interests are very, very important. We believe that the judgment was correct. It is certainly true that we in recent years have rejected the two-track idea about incorporation. But the opposite isn't a crazy argument. As recently as McDonald, there were some voices on this Court that were essentially making that argument with respect to the Second Amendment. And earlier, it's a very respectable argument. It hasn't won the day completely, but that's what apodaca rests on. Well, Justice Alito, if you're telling me that there is a little bit of daylight, then I'll take it. But I also believe that the history shows that unanimity was rejected and that that is the correct view. So we are not entirely repudiating the apodaca judgment. And we do have 50 years of reliance, which is why I emphasize that we have 32,000 people who are incarcerated right now at hard labor for serious crimes. And every one of them would be subject, would be able to file an appeal. 32,000 people were non-unanimous? No, no, Justice Breyer. I don't understand why it would apply to people who were unanimously convicted. Maybe. But I think the stronger case would be those people who were convicted by juries that were not unanimous. And how many of those are there? We don't know. I mean, if you have any idea, with all the work going into this, has anybody got any rough idea of what percentage of those people who are convicted are convicted by non-unanimous juries? There's just no reliable data. Well, if there's no reliable data, we'd think, can I fairly think, that if there had been some data, even if you just take a sample, you would be telling us. And therefore, the fact that you're telling us that there are a lot of people in jail, which I did know, that suggests something. Now, then you say there's you, there's Oregon that they're waiting. All right. Puerto Rico is a tough case, actually. It's a Hispanic tradition. And I don't know. You might have to bring up the Insular cases. You might have to revise them. You might have to get into the status question. Puerto Rico is worrying me. So is there something you want to say about that, since you raised it? Well, we have the same tradition. You have the same tradition, but you don't have, as a matter of fact, the whole system of trials that grows out of the civil tradition. That's why I think all 32,000 are at risk, because we do have a system back around. I got past the 32,000. I now want to know, since you've looked into Puerto Rico, is there a particular problem there if we overturn APODACA? I believe there is. I know you believe there is. I just want to know what there is, rather than my making it up. Because the territorial decisions were based on the authority of Congress to write laws that were different for territories, notwithstanding the fact that they still came under the protection of the Constitution, I think that there's a problem. The issue here is, does the Sixth Amendment require unanimity? Unless you're going to continue a special carve-out for the territories, then they have the same question. Is the 32,000 the reason you don't know, because the jury is not typically polled, or what? Because it is not always polled, and because that is a responsibility of the defense to not have been recorded or kept, and so the case files seem to be very inconsistent. We do know that we are already receiving a flood of these cases, as is this Court. We filed 25 briefs in the Louisiana Supreme Court last Friday. This is certainly unsettling the cases, but because a number of those people pleaded guilty based on their expectation of facing a 10-2 verdict, the criminal defense attorneys filed an amicus brief arguing that point. We also have people who were received — everyone that went to trial received this jury instruction. So we're not saying they all win. We are saying that every one of them could file, and it's like throwing — I've got the reliance point. If I believe, one, contrary to what you say, assume it, I believe that, in fact, the federal right in the Constitution does include unanimity in the Sixth Amendment, and two, I think that thereafter it was fairly clear in the law that the same — the federal rules apply to states if we incorporate. But you do have a point if you say there are anomalies in the law, and perhaps we should leave the anomaly alone, and that's where you bring in your reason, the reason being that 32,000 people, et cetera. Okay. I've got that structure. Is there any other instance you can think of where, despite a contradiction, which you're allowing under my assumptions to remain, a legal contradiction, the court says, okay, because let sleeping dogs lie. Otherwise, we get serious harm. Just a footnote. That's not taken care of by Teague and the other doctrines your adversary talked about. Your Honor, I think that one of the significant lines of jurisprudence that comes to my mind is Roe. I hesitate to bring that into this, but I do think that's an area, and I think that any time you have a non-textual right that the court has relied on, discussed, related to in passing, or quoted in passing over time, and changed incorporation doctrine, that it is that much more important to get the text and the history right. So we think that Apodaca was, that the judgment in Apodaca was correct. We do have enormous reliance interests. Counsel, under reliance interests, you say we should worry about the 32,000 people imprisoned. One might wonder whether we should worry about their interests under the Sixth Amendment as well. And then, I can't help but wonder, should we forever ensconce an incorrect view of the United States Constitution for perpetuity for all states and all people, denying them a right that we believe was originally given to them because of 32,000 criminal convictions in Louisiana? No, Justice Gorsuch. But we don't believe that it was a right that was given to them in the Sixth Amendment. I understand that. I'm talking about a reliance argument. Doesn't that greatly diminish a single state's claim of reliance with respect to a subset of criminal convictions when we're  talking about a crime? No one, least of all me, is going to stand here and diminish anyone's liberty interests. So I'm not, I wouldn't take that position. But even in a long line of this Court's significant decisions related to criminal law and criminal procedure, the Court has applied them in a forward fashion instead of retroactively. So I mean, that's a concern for us. Well, if the jury were... That's not, the case of retroactivity to convictions that are already final is not before us. It would come before us in a case if you lose this one. But that is not a question that we can properly address here. It hasn't been briefed. It hasn't been decided below. Justice Ginsburg, we certainly do appreciate you not addressing that issue without our opportunity to brief it. I would point out that our law that we just passed makes the law, it does draw a line, and it says that it will apply to all crime, that unanimity will apply to crimes that were committed after January 1st, 2019. So to some extent, we are talking about at least some retroactivity because we've already made a decision to address it going forward. Can I pick up on Justice Gorsuch's question a second? So assume that the Sixth Amendment requires unanimity. I know you disagree. And assume that our law ordinarily requires incorporation against the states of rights that apply against the federal government. So assume ordinarily it would be incorporated. Then we get to the Apodaca question. Seems to me there are two practical arguments for overruling Apodaca, if you accept that it's holding. One is, as Justice Gorsuch says, there are defendants who have been convicted and sentenced to life 10-2 or 11-1 who otherwise would have not been convicted. So that seems like a serious issue for us to think about in terms of overruling. And the second is that the rule in question here is rooted in racism. Rooted in a desire, apparently, to diminish the power of the state and diminish the voices of black jurors in the late 1890s. So do either of those two – and that doesn't go to the Sixth Amendment. That goes to the stare decisis angle. Do either of those two things – or I guess I should say, why aren't those two things enough to overrule if you accept the legal premises, which I know you don't. But if you accept those, why aren't those two things enough? Again, unfairness to defendants and rooted in racism. So, as to the first question with regard to unfairness to defendants, I just do not see how you can separate this from the six-man jury that was approved of in Williams, which is a six-man jury for all crimes less than capital. And granted, unanimous rule, but still only six. And Louisiana's rule still requires 10. So I don't think it's fundamentally unfair, nor do I think that this Court in any precedent has ever held that it is. But Williams held that the number, the number of jurors, was not at the heart of the jury trial right. The Court said it was a historical accident. It resembled certain biblical references like 12 apostles, 12 tribes of Israel. There was nothing inevitable about the number 12. But there was about the requirement that whatever the number is, they all agree. Mr. Chief Justice. May I respond? Justice Ginsburg, I think that it was not an historical accident. I would disagree with that description. I think that these two things were married together in every description. The number 12 and unanimous in every description have always been married together. It's hard to say you disagree when Williams described the number 12 as a historical accident. They just say Williams was wrong in that respect. I think that characterization of it was dismissive. That's all. Thank you. Thank you, Counsel. Five minutes, Mr. Fisher. Thank you. I'd like to make a couple of quick factual points and then talk about stare decisis and reliance. Justice Breyer, you asked a couple of questions about numbers and facts. We say in our reply brief, using one of the state's own filings, that there are 36 cases on direct review right now in Louisiana where this issue has been presented. Then even within those 36s, even within that 36, you're going to have arguments about whether it was adequately preserved and all the rest. We think, at least in the direct review level, the numbers are actually quite modest and low. As the Court has described throughout the last half of the argument, the retroactivity questions can be left for another day and covered by their own reliance doctrines. You also asked about Puerto Rico. In footnote 10 of our brief, we note that the Court held in Balzac that the right to jury trial does not apply the same way in Puerto Rico as to the states. That would be a question about the Insular cases. You're going to be talking about that next week, perhaps, but it's something that this case doesn't necessarily address. As to stare decisis and reliance, let me make a couple of points about the state's framing of its arguments and then talk about, I think, Justice Kagan, your alternative framing of the arguments. As to the state's framing of the arguments, I think it's helpful to remember why we have the stare decisis in the first place. It's about settled expectations in the law. What we're asking you today to do are to reaffirm two things the Court has said many, many times over the years. One is the Sixth Amendment requires unanimous verdict. Second, when an argument is made to the states, it applies the same way as it does to the federal government. So to write that opinion, all you have to do is reaffirm what you've said many, many times under the law. It is the state's position that would create upheaval as to the law. It would raise questions like the one the Chief Justice asked about whether seven to five is okay. The state not only doesn't answer the question in its brief, it provides no way to answer the question. And that would just be one of many questions that would arise if you agreed with the state's view. So I think then you're left with the alternative argument, that what about putting a reliance interest into Appadokia itself? I'm not sure, by the way, that Oregon does that. I think it's also telling that Oregon is not willing to defend. I know it doesn't go the other way like the state does, but it certainly isn't willing to defend Justice Powell's reasoning in Appadokia. But let's imagine that argument were in front of the Court. I think there's three reasons why you would still overrule Appadokia. The first is the one a couple of you mentioned, which is that it's not just the interest of the state that have to be taken into account. It's the interest of defendants. And before we take away somebody's liberty, over 600 years of common law tradition and Sixth Amendment tradition is we demand a unanimous verdict, unanimous consent of the cross-section of the community. And that is important as the social science brief in this case shows for accuracy, public confidence, and all the rest. And so those reliance interests, which by the way, the state itself is not reliant, maintains the ability under its law to try anyone going forward for a crime committed before January 1st, 2019 and seek a 10-2 verdict. And so that could go on for years and that ought to be taken into account. Secondly, I think incorporation is just different. I think that's the lesson of the sweep of this Court's cases is reliance interests are less important when it comes to incorporation because the Bill of Rights themselves are so important. When the Court says something is a fundamental rule under our way of doing criminal justice, the states have to follow that rule the same way as the federal government. And then the last thing I think that makes this case different than an ordinary stare decisis case is the vote in Apodaca. It's not just that it was a 4-1-4 vote, but it's just that the other eight justices rejected the decisive reasoning in that case. And I think that makes this almost a universe of one. And if I could push it even further, I would say that if you have any doubts, look at Justice Powell's reasoning. Justice Powell's was based on a refusal to follow precedent. What he said was, I'm agreeing with the past dissenters. I know you have this rule from Malloy against Hogan from five years ago that requires the same standards to apply in federal court as they apply in state court as they apply in federal court. But I don't want to follow that rule. He didn't even try to distinguish the Court's old holding. So in a sense, Apodaca itself was born of a disregard for stare decisis. And so if you feel strongly about stare decisis as a value, this case is almost singular in its compelling reasons right now to overrule Apodaca. Since you mentioned Balzac, can I ask you a question about that? So let's imagine this case is decided in your favor and then a defendant who's been convicted by a non-unanimous verdict in Puerto Rico comes here and he says, look, I am a citizen of the United States. And the only reason why I was able to be convicted by a non-unanimous verdict is are these old insular cases that reflect attitudes of the day in the end of the aftermath of the Spanish-American War? And just as you brushed aside Apodaca, you should brush aside the insular cases. I think I would say that would be different for all the reasons I just outlined. The insular cases were majority decisions from the Court. They were based on a view that has not been disregarded or left behind in the Court's jurisprudence. There may be arguments parties can make under ordinary stare decisis principles, but the last point I would leave you with is this is not an ordinary stare decisis case. Thank you, counsel. The case is submitted.